Good morning, Council. Last case of the morning is 21-4006, George v. Beaver County. Council, for appellant, if you'd make your appearance and proceed. Thank you, Your Honor. Good morning, Your Honor. This may please the Court. Eric Vogler, for the plaintiff and appellant, Kathy M. George, on behalf of the estate of Troy D. Bradshaw. This is a detainee suicide case. In particular, this is a detainee suicide case where prison officials knew from booking and throughout the detainee's stay at their facility that the detainee was suicidal. He was never provided the requisite care, mental health evaluation, or other policy-mandated care that a presenting suicidal detainee should have had. Should have is a word of negligence. Policy violations don't equal constitutional violation, right? That's correct, Your Honor. That's correct. And so I think at bottom, the question for this panel is simply how broadly or narrowly to read the subjective knowledge component of the deliberate indifference standard, that standard that Your Honor is referring to. And that subjective component is whether prison officials have actual knowledge of a particular inmate's substantial risk of serious harm. This Court has long held that suicide qualifies as serious harm. So really the appreciation, the knowledge that prison officials have to have with regard to an inmate or a class of inmates is that the policies in place or the conditions at the facility are such that substantial harm, excuse me, serious harm is substantially likely to result. Okay, that goes to your Minnell claim. Let me ask you a question. In your reply brief in particular, you acknowledged that even though the district court did not rely on the clearly established law prong of the qualified immunity standard, nevertheless, that is your burden to carry. What case, what is your strongest case to show that Corporal Rose was not, violated Mr. Bradshaw's constitutional rights and specifically on this deliberate indifference aspect, the subjective prong? What's your strongest case to show the law was clearly established that he would have been unnoticed, that that was a violation? Yeah, I think, Your Honor, it's Berry v. Grand County of Utah. Case number 119, F3rd, 862. Yes, I have that. But isn't Berry a case in which we found that the defendant's conduct did not rise to a level of deliberate indifference? That's correct, Your Honor. And then how would that have put Corporal Rose unnoticed that his conduct would be wrong? Well, so in Berry, likewise in the estate of Hawker, this court was very clear in stating that a custodian, if a custodian is deliberately indifferent to a substantial risk of suicide, then they may not apply for or have qualified immunity, dismiss their case. Crystal clear, but then that begs the question of how this officer sitting in the jail is going to know that, boy, if I do this, my conduct is deliberately indifferent and 10th Circuit said I'm going to be liable. How is he going to know that? I mean, that he knows the general under, you know, of course, we're presuming under the law, he'd know the general principle that if he's deliberately indifferent, he's subject to liability. But what about the conduct? I mean, wouldn't there have to be some factual correlation that would allow him to know his conduct would subject him to liability? Yes, Your Honor. There are a couple of cases that I think could be instructed there. Bame versus Iron County, another case that we cited, was decided approximately one month before Mr. Bradshaw committed suicide. In that case, excuse me, isn't Bame unpublished authority? I'm not sure if Bame is unpublished. It's in the federal appendix. So that may suggest it is. Go ahead, please. Well, and I think the facts there in this court has has questioned whether an unpublished opinion is sufficient or not. I recognize that. But in Bame, it was a very similar case. The prisoner there, excuse me, the detainee presented as suicidal. When that prisoner presented as suicidal, the booking officer took immediate remedial action. She stripped him of all his clothing, placed him in a suicide smock, removed other items from his person and from the cell, placed him in a cell that was specifically designed for detainees or prisoners who presented as suicidal. And therefore, the Tenth Circuit found or excuse me, held that that officer had taken sufficient action. The only inaction that she may have been found negligent for was her allowing 80 minutes to pass between monitoring that no officers had actually inspected the cell for a period of 80 minutes. But again, as Judge Holmes has stated, it's not a negligent standard here. But that tells you what you should do. It doesn't tell you when you would be liable for what you didn't do. And that's that. That's the that's that's the crux of the problem here. What's the other way? You said you had two cases. What's the other one? There's Bame. And what's the other? I think in Du Bois versus Payne County, again, it's another federal appendix opinion. OK. And I apologize to the Du Bois or the Du Boises for slaughtering that pronunciation. But that's five. Forty three federal appendix. Eight. Forty one. OK. In Du Bois, they're a prisoner. Presented to a facility. And this is where this is very distinguishable from the present case that that prisoner indicated that he was not suicidal, did not have suicidal ideation. May have had a history of depression, but otherwise presented as normal other than having to come off with some opiates that he had taken. There, the facility itself did not take any abnormal action. It certainly didn't put him in a suicide cell, did not monitor him for potential suicide or other self harming behaviors. And thereafter, and unfortunately, Peter was his name. Peter committed suicide by diving off of the second floor of the prison facility into a common area in analyzing that case. This court, and I apologize, was very specific in saying both. The individual officers who treated booked interacted with Peter were not aware of his suicide or his suicidality, his suicidal ideation. But. The both the facility, the officers, the county, the sheriff could be found liable if there was an act or failure to act despite knowledge of a substantial risk of serious harm. Now, in that case, because they didn't take any action, they might have been found liable, but for the prisoners indicating that he was not suicidal. Ultimately, those officers treating Peter did not know and could not have known that he was suicidal and therefore placed Peter outside of this class of prisoners that we're dealing with today. Go ahead. The Supreme Court has been very clear and most recently in city of Taliqa versus bond in telling us that it's not good enough that it's analogous that you can look at it from a legal perspective and say this is similar. It's analogous. You might be able to interpret it. It's got to be. I mean, it's got to be the spouted cow, a cow, as best I can tell. And here with its corporal Rose, you would the first time he interacted with the decedent, he did everything he should have done. Right. He was aware he was suicidal. He put him in a dry cell. He put it on the record. And then he went home. He was off shift and he came back and the situation was different. Now, the decedent was in a normal cell had been given the normal prison clothing and appeared to be in good spirits. Do we have any case that tells us that he had a constitutional duty at that point to intervene at that point? I'm not sure you're on. I don't know that there's anything that's so black and white that says he has to reset his expectations or has to reset his knowledge. I think I need to clarify one characterization that your Honor made, Judge McHugh, and that is the booking officer who performed intake of Troy Bradshaw did note that Troy was suicidal, placed him in a dry cell. She, Officer Stroud, then stayed with him, sat with him for several hours until she could transition him to the new shift, which was supervised by Corporal Rose. In her notes, she stated in all caps suicidal. And did apparently by I think any objective metric did what she could with her understanding or lack of understanding of any policies the county may have had to prevent that serious harm is when Corporal Rose then takes Mr. Bradshaw and removes him from the dry cell. Takes him through another medical evaluation where it's stated Troy states specifically, I am suicidal. I've had a brother who committed suicide. Now, that puts Corporal Rose once again on the subjective knowledge specific to Troy that he is suicidal that places him in a different class of detainees. It's much more similar to the detainees that we see in Farmer, in Tafoya from this circuit, where because of their characteristics or because of the risk to them generally being in a detention facility, that officers need to and counties and sheriffs need to take care that the conditions or the enforcement or non-enforcement of their policies are not depriving their detainees of the medical care that they're entitled to under the 8th Amendment. You have a you have a supervised reliability claim against Sheriff Noel or Noel however he pronounces it, right? Right. We do, Your Honor. Okay. And and what what evidence is there at all that he knew anything and now and I'm in the case reference. I'm alluding to is Cox versus glands. And why isn't this just like that? And the Sheriff Sheriff plans didn't know anything from anything about the the suicidal individual there and the same appears to be true here at first glance. Your Honor, the Cox v. Glands case appears to cut against our supervisory liability claims. I think it is distinguishable in two ways. First, in Cox, it was whether a detainee had a constitutional right to adequate mental health screening at all. That prisoner, like others we've even discussed today, did not present as suicidal. In fact, this court held that there was no way that the officers in that case could have known that the detainee was suicidal. And therefore, because they did not know and could not have known. Then there was no way for any supervisory liability to attach. I think Cox still left open the door for that kind of objective reasonableness analysis. Well, I think what I think I saw and I think what I'm hearing you say now and what I thought I saw you in your brief was this notion that, well, the one point of distinguishment, at least, is that the officers in Cox knew didn't know. And the officers here did know. Well, what difference does that make? Because under 1983, liability is personal liability. And there has to be some involvement, personal involvement by the sheriff in this matter. And if he didn't know, if he didn't know Mr. Bradshaw from Adam and he didn't know about the circumstances of his suicidal condition, then what difference does it make what his officers knew for his liability? It's because, Your Honor, their knowledge that he was suicidal places Troy Bradshaw in a different class of prisoners, those, excuse me, detainees who are suicidal. It's like the detainee. I apologize, Judge, please. You're not trying to impute the officer's knowledge to the sheriff, are you? No. What I'm saying is that the sheriff in the county created conditions such that at least a reasonable jury could conclude that the conditions were created that when a detainee presents as suicidal, the lack of enforcement or adequate policies altogether creates a substantial likelihood of serious harm. Well, that sounds like you're not your individual claim. That's right. That's right. I thought Judge Holmes was asking you about the individual claim against Sheriff Knoll, but maybe I'm wrong. I was. What about that claim? I apologize, Your Honor, I'm out of time. Can I answer this question briefly? Please do. It's because this is similar to the case this court heard in Layton versus Board of County Commissioners. Again, unpublished. It's 512 Federal Appendix 861. There, a detainee presented with serious kidney ailments. The detainee was not adequately screened or treated, despite the officials in the detention facilities knowledge of his substantial risk of serious harm. Here, once you have a detainee who presents to a jail and says, I am suicidal, he's in that same position. Now, it's no longer whether the officers or the sheriff have particularized knowledge of that individual and whether he's suicidal or not. It's whether they have knowledge of the conditions of their jail and whether they're adequate to treat suicidal detainees. And Your Honor, I think it's important to note, and I apologize again for going along. Under either standard, this kind of expanded standard that I'm arguing for, or under the very narrow standard announced in Cox, I think Corporal Rose is liable. The inferences drawn against him or, excuse me, in his favor were inappropriate. All inferences, obviously, on summary judgment need to be drawn in favor of the non-moving party. All right, thank you, Counsel. We'll hear from Mr. Hopkins, please. Thank you, Your Honor. My name is Andrew Hopkins, and I represent the defendants in this matter. So the court should affirm the decision of the district court. First, the district court correctly granted defendants Rose and Sheriff Noel qualified immunity. This is because the undisputed material facts show, one, that Rose did not violate Bradshaw's constitutional rights. Plaintiffs states right in his complaint that he's suing Rose as a supervisor. However, Rose didn't have responsibility regarding policy. He was a corporal, and his position is more analogous to, like, a shift manager than to a supervisor with policy authority. He was only in charge of the three other deputies when he was actually on shift. He did not have any responsibility for drafting or implementing policy. Therefore, plaintiff's theory of the case as stated against Rose falls apart for this reason alone. Well, just because he called him a supervisor in his complaint doesn't mean he's not trying to tag him for his individual personal participation with Mr. Bradshaw. Unlike the situation where you have a supervisor sitting in another office somewhere, he actually interacted with Mr. Bradshaw. And it's my understanding they're holding him responsible for that knowledge. I agree, Your Honor. The problem is that he hasn't pled that in his complaint. He just says that Rose is a supervisor in his complaint. And then he says he uses the general term defendants for personal interaction throughout the rest of the complaint. Well, he calls him a corporal, but then he talks about what in the complaint does he not talk about the interaction that Rose had? He never names Rose specifically. He just says defendants did this or defendants did that. Well, we're on summary judgment, right? So there's evidence to that effect, right? Yes. OK, well, let me let me talk about one point related to the notion of construing the facts in the light most favorable to the plaintiff. And let me get your view on this. When I looked at the district court's order, the district court at the end talks about the notion that that he was transferred to the cell cell three. Mr. Bradshaw, quote, before Rose knew, unquote. Well, why is that construing facts in the light most favorable to the plaintiff? When earlier in the district court order, it noted that Corporal Ken Rose said that ordinarily and in her ordinary course, she would tell Rose that she was transferring, that he was that he was suicidal. In other words, the statement that the Rose didn't know he was suicidal at the time he was transferred to cell three doesn't seem to correlate with the notion that Ken Rose would have told Rose he was suicidal before he was transferred to cell three. So why isn't construing the facts in the light most favorable to the plaintiff? Why shouldn't I assume that Ken Rose told Ken Ross? I'm sorry, I don't mean to confuse the two. Why shouldn't I assume that Ken Ross told Rose that? So even if Ken Ross did tell Rose that it that was she would have gone out of shift at 6 a.m. that morning and then Rose did not move himself until I think it was around three in the afternoon. Well, then he would have. But but Rose would have known at the time that he moved to cell three that he was suicidal. But he hadn't personally observed anything in Bradshaw's behavior to indicate to him that he was suicidal, just what he had been told by Ken Ross. And the point I'm making is that the reference in the district court's order, it seems to me, does not correlate with the notion of construing the facts in the light most favorable to the plaintiff. Because if you were to do that, you would have assumed that Rose knew he was suicidal at the time he was transferred to cell three. That's my only point. I understand. And I also want to clarify. So he was originally placed in cell two and then he was moved to cell three. They're right next to each other. They're still in the exact same area of the jail. The only difference between cell two and cell three is cell two is a dry cell where there's no bedding or toilet. And it was later in the afternoon and Bradshaw needed to use the restroom. So Rose had moved him so that he could use the toilet. Well, that's not in the complaint. No, but it's in the facts. But we do know. I mean, Rose admitted that he knew that Mr. Bradshaw was suicidal when he moved him. Right. I don't think he was generally aware and that it was in the notation in the file. I understand, Your Honor. And even if that's the case, again, he didn't observe anything personally. And even if he knew he was suicidal on the 14th, there's no facts that show that he knew he was suicidal on the 15th when he actually committed the act. And that that leads into an interesting line of questions related to, I think the plaintiff may have alluded to this in their brief, the notion of a reset. I mean, why why is it a reasonable characterization of characterization of the facts by the district court to say that everything that that Corporal Rose knew on the 14th should go out of his head on the 15th? Because he looks he's he sleeps a lot and looks normal. I mean, it seems to me, why is it not reasonable to import what you knew on the 14th into your character, your view of the individual on the 15th? You had an individual on the 14th who looked like they were going to kill themselves. At least they said they would. They were suicidal. I guess to be more specific, what why is it why is it a fair inference that all the conduct that took place on the 14th should cease to not have any relevance to the 15th? And I think the issue with that, then, is that there's no case law that indicates that that could carry over to the next day. So it's not clearly established. So this is a clearly established analysis. So, so right. So even if it's a violation, it wasn't clearly established. But I also wanted to point out that Rose took several actions to care for Bradshaw, which indicates that he was not being deliberately indifferent to Bradshaw's constitutional rights. For example, he knew that he was in the booking area, which I was just discussing. This is the most highly trafficked area in jail. So the deputies and the guards are coming in and out. Every time a new inmate comes into the jail, they come through the booking area. And so therefore, just by virtue of the fact that Bradshaw was in the booking area the entire time, then Rose knew he would have been constantly monitored. Well, it didn't stop Mr. Bradshaw from killing himself. Right. I mean, he was he was in cell three when he killed himself. Right. Yes, I understand. But even a perfect implementation of a suicide policy, that doesn't necessarily prevent an inmate from killing himself. That's that's quite true. But, I mean, the fact there is cell two existed for a reason. Right. It existed as a suicide cell. And so, I mean, the fact that they put him in another cell in the booking area doesn't change the fact that you should evaluate whether he's still suicidal. Right. Right. But it's distinguishable if he had taken him into the general population of the jail where he wasn't being monitored at all. He still ensured that he was in the booking area. Also, Rose wasn't on shift when Bradshaw came to the jail originally. So he didn't personally witness any of his suicidal behavior. Well, but he certainly witnessed the examination where Mr. Bradshaw very clearly said that he was suicidal. And the nurse turned to him and said, did you hear that? Right. Booking officer, your honor. Yes. And it's a little unclear in the record whether he actually comprehended that. But, well, he certainly comprehended that Mr. Bradshaw was suicidal. I understand. But the fact is that based on his interactions with Bradshaw, Bradshaw said, you know, he wasn't going to cause any more problems. Earlier that night when Ken Ross was watching him, he was drunk and he was violent and he actually was punching his cell window and his hand was bloody. And so later that afternoon, he had calmed down. He said he wasn't going to cause any more trouble. And Rose was trying to just help him out by allowing him to move cells so he could use the restroom. Let me let me make sure I understand your position on this one point. The district court was of the view that on the 14th anyway, Corporal Rose would have known of a substantial risk of suicide. Nevertheless, the court found that on the 15th that had dissipated. Do you accept that characterization or is it your view that at no point he knew that there was a substantial risk of suicide? I would say no point he knew, but I don't think it would matter for the court being able to affirm based on the clearly established analysis that I was discussing earlier, because there's no case law that indicates if you wait a day and the guy seems like he's OK, that that can't reset his subjective knowledge of what he believed, whether he believed Bradshaw was suicidal or not. And the fact is, on the 14th, when he left around 630, he wasn't aware of any specific threat to Bradshaw. All he had done is move himself. He hadn't given him a bedroll. And also, Rose knew that nobody had committed suicide in the jail before, so he didn't think it would be that it was a major concern that he would be successful in being able to carry out suicide. Plaintiff spends a lot of time discussing policy failures, but as the court already has recognized, failing to follow policies doesn't show a constitutional violation in and of itself. And then as far as the clearly established analysis, the court is aware, I'm sure, that qualified immunity must be granted if the officer might not have known that their conduct was unlawful. So existing precedent must have placed the question beyond debate and can't be defined at a high level of generality. And only published 10th Circuit opinions or U.S. Supreme Court cases can clearly establish the law within the circuit. So district court cases or a single appellate court's decisions can't clearly establish law. Another appellate court's decision. Well, the district court spent a lot of time citing cases from other circuits and supporting his decision, not the least of which was a 9th Circuit opinion in which it referred to the notion that on the 15th there was not, quote, an acute risk, unquote, of suicide. That's not our standard, is it? Well, I think the issue is that there isn't a standard. Acute risk as opposed to substantial risk? Can you say that one more time? I'm sorry. In other words, our standard is, did you have a substantial risk knowledge of substantial risk of suicide, not an acute risk, which was the term that the district court referenced in saying there was not that on the 15th? I understand. And yes, but that seems more of a term of art. And I don't know how I would distinguish the meaning of those two words in that context. OK. But more importantly, I think plaintiff, as he was just discussing, doesn't point to any controlling cases that show liability for Rose or the sheriff and that it clearly establishes constitutional violation. For example, he cited Berry v. Graham County, which says that suicide can create a cause of action. Yes, we grant that. But to use that case to satisfy the clearly established analysis would be to do precisely what the Supreme Court says is to define the right at too high a level of generality. Additionally, it's a little confusing why plaintiff even points to Berry when the defendants were granted qualified immunity in that case. So it's plaintiff's burden to point to controlling cases with analogous facts where liability was established to satisfy the clearly established analysis. So plaintiff cannot get around that Taylor v. Barks case, which we cited in our brief. It's a U.S. Supreme Court case that says it's not clearly established that suicide screening protocols are even constitutionally required. And the court recognized that same principle. This court recognized that same principle in Cox v. Glantz. So for all these reasons, the court should grant qualified immunity for Rose. And I can discuss the sheriff for a minute, if you'd like. Please. It's your time. Yes. So the sheriff, there's no facts that show that he was deliberately indifferent to Rose either. Or not to Rose, Bradshaw, excuse me. So sheriff didn't know about Bradshaw or that he was suicidal or that he was even in the jail. So this fact alone forecloses liability against the sheriff. Plaintiff's entire theory of liability presupposes that the sheriff wasn't adequately monitoring the implementation of suicide prevention policies. But I want to read a quote from Cox v. Glantz, which is a controlling decision from this court. And Cox was also a jail suicide case where the court granted a sheriff qualified immunity as it related to the implementation of jail suicide policies. So the quote is, irrespective of the alleged deficiencies in the jail suicide screening protocols, in order for any defendant, including the sheriff, to be found to have acted with deliberate indifference, he needed to first have knowledge that the specific inmate at issue presented a substantial risk of suicide. So that statement is very strong and plaintiff cannot get around this case if the sheriff did not have personal knowledge of Bradshaw. So for that reason, the court can't find that the sheriff was deliberately indifferent. And then finally, as far as liability against the county, for county liability, plaintiff has to show that there's a constitutionally defective policy or custom that the final policymaker, i.e. the sheriff, acted with deliberate indifference and that it directly caused the harm. And also the plaintiff has to show an underlying constitutional violation by a county employee. So therefore, if the court finds that the sheriff didn't violate Bradshaw's rights, then it could affirm the dismissal in the county on this basis as well. However, plaintiff doesn't identify a defective policy. The jail had a suicide prevention policy, even if it was being executed imperfectly. The fact is that nobody had ever succeeded in committing suicide prior. The jail gave mental health training every year, which included suicide prevention in its training occasionally. Every officer that worked at the jail had to be certified by the state of Utah, and their training there included mental health components. And yet it wasn't known that the policy was inadequate since there had never been a prior suicide. And the county policy didn't directly cause the harm because it's plaintiff's burden to show that he would not have committed suicide but for the suicide policy. That is, even if the suicide prevention policy was perfectly implemented, Bradshaw might still have been successful in his attempt. He has to show that the policy itself is what caused his harm. And with that, I believe my time is up. Unless the court has any questions, I am complete. Any questions? No. All right. Counsel, case is submitted.